UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THEODORE PORTER,

                                          Plaintiff,

v.                                                                      8:06-CV-1150
                                                                        (GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

Office of Mark A. Schneider                            MARK A. SCHNEIDER, ESQ.
Counsel for Plaintiff
57 Court Street
Plattsburgh, New York 12901

HON. GLENN T. SUDDABY                                 VERNON NORWOOD, ESQ.
United States Attorney for the                        Special Assistant U.S. Attorney
        Northern District of New York
Counsel for Defendant                                 BARBARA L. SPIVAK, ESQ.
P.O. Box 7198                                         Regional Chief Counsel, S.S.A.
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER[1]

## I.      BACKGROUND

### A.      Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on

June 6, 2003. (Administrative Transcript ("T") at 57-59.)  The application was denied initially (T.

at 34-38) and on reconsideration.   (T. at 40-41).    Plaintiff requested a hearing before an

_____

[1]        This matter is before the Court by consent of both parties.  (Dkt. No. 13.)

Administrative Law Judge ("ALJ") (T. at 42).  The hearing was held on January 13, 2005.  (T. at 282-305.)  On May 12, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 25-33[2].)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 25, 2006. (T. at 5-7.)  Plaintiff commenced this action on September 25, 2006.  (Dkt. No. 1.)

> **B.     The Contentions**

Plaintiff makes the following claims:

(1)     The ALJ erred by finding that Plaintiff's impairments do not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, appendix 1.   (Dkt. No.10 at 15-16, 20-22.)

(2)     The ALJ erred by not giving controlling weight to the opinions of Plaintiff's treating physicians.  (Dkt. No. 10 at 5-15.)

(3)     The ALJ erred by finding that Plaintiff's testimony regarding his ability to work and the severity of his limitations was not credible.  (Dkt. No. 10 at 22-25.)

(4)     The ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence.  (Dkt. No. 10 at 16-20.)

(5)     The ALJ was biased against Plaintiff.  (Dkt. No. 10 at 26-28.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 14.)

---

[2]     The record also includes a copy of the ALJ's decision from which one page is missing.  (T. at 13-18B.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2007).  "If at any step

a finding of disability or non-disability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency

3

> determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817

F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was born on March 9, 1952. (T. at 57, 285.)  He completed high school.  (T. at 73, 288.)  Plaintiff was an ironworker for 28 years. (T. at 289.)  Plaintiff alleges disability due to numbness in his feet, legs, hands and neck. (T. at 68.)

IV.     THE ALJ'S DECISION

The ALJ found that (1) Plaintiff met the disability insured status requirements of the Act from December 7, 2002, through May 12, 2005; (2) Plaintiff suffers from the severe impairments of lumbar disc disease, cervical disc disease, mild right upper extremity carpal tunnel syndrome and status post convulsive syndrom with post-traumatic headaches; (3) Plaintiff's impairments do not meet or equal any listed impairment; (4) Plaintiff's testimony about his inability to work and the severity of his limitations was not credible; (5) Plaintiff has the RFC to lift and carry up to 20 pounds, stand and walk up to six hours and sit intermittently during the remaining two hours in an eight hour workday, perform gross dexterity work with his hands, but is unable to perform fine motor work with his hands, engage in any significant climbing, balancing, crouching or crawling, or frequently twist his neck and can only occasionally stoop and kneel; (6) Plaintiff cannot perform his past relevant work; (7) Plaintiff is closely approaching advanced age, has a high school education and no transferable skills; (8) Plaintiff has the RFC to work as a bench inspector, an office helper,  a locker room attendant, or a packer; and (9) Plaintiff is not disabled.  (T. at 31-33.)

V.     DISCUSSION

   A.     Remand Is Appropriate Because the ALJ Did Not Discuss Listing 1.04 or
          Plaintiff's Obesity with Sufficient Specificity.

          1.     The ALJ Did Not Discuss the Criteria of Listing 1.04 with Sufficient
                 Specificity.

Plaintiff argues that the ALJ erred by finding that Plaintiff's impairments did not meet or equal Listing 1.04A.  (Dkt. No. 10 at 15-16.)

6

A claimant is automatically entitled to benefits if his or her impairment(s) meets criteria set forth in "the Listings".  20 C.F.R. § 404.1520(d) (2007).  The burden is on the plaintiff to present medical findings that show that his or her impairments match a listing or are equal in severity to a listed impairment.  *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998).  In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d) (2007).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify.  *Id*.

When evaluating whether a claimant's impairments meet or equal a listing, the ALJ must refer to the specific criteria set forth in the listing.  *See, e.g., Morales v. Barnhart*, 218  F. Supp 2d 450, 459-460 (S.D.N.Y. 2002).  An ALJ must set forth his or her analysis of the listing criteria, like other "crucial factors in any determination ...with sufficient specificity to enable (a reviewing court) to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984).  A reviewing court "cannot make an independent determination as to whether the record supports a finding that Plaintiff meets or equals (a listing).  Instead ... the ALJ needs to articulate his basis for finding that Plaintiff does not meet or equal the criteria" for a particular listing.  *Hendricks v. Commissioner of Social Security*, 452 F. Supp. 2d 194, 199 (W.D.N.Y. 2006).

The criteria specified by Listing 1.04A are:  herniated nucleus pulposes resulting in compromise of a nerve root with (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (b) limitation of motion of the spine; (c) motor loss (atrophy with

7

associated muscle weakness or muscle weakness); (d) sensory or reflex loss; and (e) positive straight-leg raising test if the lower back is involved. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04 (2007).

The record shows that Plaintiff suffers from herniated nucleus pulposes of the lumbar disc (T. at 121) and severe cervical cord compression (T. at 138) and that he has limited range of motion in his spine. (T. at 127, 129, 174, 180, 185, 188, 190, 227, 229-230, 258, 259, 278.)

The record contains mixed reports regarding motor loss. Some of the records note that Plaintiff's motor skills are normal and that his muscle strength is full. (T. at 135, 200, 238.) Others, including those of the consulting physician on whom the ALJ placed "significant weight", note that Plaintiff's fine motor skills are impaired and that he suffers atrophy in the upper extremities. (T. at 158, 278.)

The record also contains mixed findings regarding sensory and reflex loss. For example, on October 24, 2002, Anthony DiBona, Jr., M.D. noted that Plaintiff's lower extremity reflexes were plus 2/4 bilaterally. (T. at 188.) On December 12, 2002, John P. Nolan, D.O. stated that "(s)ensory examination did not reveal focal sensory deficit. Reflexes were 2/4 ... Sensation was intact in the proximal right lower extremity and in the lateral aspect of the right leg. In the right foot there was a very minimal decrease in pinprick sensation. Reflexes were 2/4 throughout the right lower extremity." (T. at 135.) On January 20, 2003, Elliot L. Ames, D.O. noted that "motor and sensory latencies are ... normal." (T. at 137.) On April 28, 2003, John Yulo, L.P.T., M.D., noted that "(d)eep tendon reflexes are +3 for the right upper extremity with positive right Hoffman's reflex ... Sensory examination reveals decreased light touch sensation at the bilateral

lower extremity area in no specific dermatomal distribution.  There is also atrophy at the right

upper arm musculature."  (T. at 174.)  On May 29, 2003, Eby L. Banas, M.D., noted that

"(s)ensory examination is normal ...  Reflexes are +2 in the upper extremities, +1 at the left knee

and left ankle and +3 at the right knee and right ankle."  (T. at 183.)  On May 30, 2003, Dr.

DiBona noted that Plaintiff's "(u)pper extremity reflexes were plus 2/4 strength plus 3/4

bilaterally ... lower extremity reflexes plus 2/4 bilaterally at Achilles and patellar tendons."  (T. at

190.)  On June 3, 2003, Srinivas A-Bhumi, M.D. noted that "(t)here is patchy hypoesthesia in the

upper and lower limbs."  (T. at 185.) On August 18, 2003, Dr. Banas stated that "sensory

examination reveals a mild loss of sensation at the tips of his fingers and his toes ... and reflexes

are +2 in the upper extremities, +1 at the left knee and left ankle and +3 at the right knee and

right ankle."  (T. at 200.)  On January 6, 2004, Rachel Baluyot, D.C. found "(n)o hypo or

hyperesthesia ... in the upper extremities.  Bicep and Tricep Reflexes were +2 and symmetric."

(T. at 227.)  On March 31, 2004, Raymond G. Wisdo, D.C., noted "(n)o hypo or hyperesthesia ...

in the upper extremities.  Bicep and Tricep and Extensor Digitorum Reflexes were +2 on the

right and +1 on the left ... Patellar and Achilles Reflexes were +2 and symmetric."  (T. at 229-

230.)  Dr. Horn noted that "(r)eflexes are absent for the right triceps.  Reflexes are present for the

biceps bilaterally and supinator reflex is accompanied by a finger flick (Hoffman) on the right,

negative on the left ...There is altered sensation bilaterally of the ulnar borders of the hands and

ulnar three fingers...  There is no sensory change today ... There is a diminished left ankle reflex."

(T. at 278.)

As to Listing 1.04's final criterion, the record shows that Plaintiff had both positive

straight-leg raising tests (T. at 127, 178, 183, 200) and negative straight-leg raising tests.  (T. at

135, 174, 185, 227, 230.)

The ALJ stated that he gave "particular consideration" to Listing 1.04. (T. at 26.) However, rather than discussing the medical evidence described above, the ALJ found that Plaintiff's impairments did not meet or equal the listing because "there is no showing that ...claimant has been unable to perform gross dexterity work with his hands and/or has been unable to ambulate effectively".  (T. at 28.)  Listing 1.04 does not require that a claimant be unable to "ambulate effectively" or "perform fine and gross movements effectively"[3]. Thus, the ALJ did not refer to the specific criteria set forth in the listing and, as a result, this Court is unable to determine whether the ALJ's determination is supported by substantial evidence. Accordingly, remand is appropriate.

> **2.     Remand Is Appropriate Because the Court Cannot Determine Whether or Not the ALJ Considered Plaintiff's Obesity When Assessing Whether Plaintiff Has a Listing-level Musculoskeletal Impairment.**

Plaintiff argues that the ALJ erred by not considering his obesity.  (Dkt. No. 10 at 20-22.)

The Regulations require ALJs to "consider any additional and cumulative effects of obesity" when assessing whether an individual has a listing-level musculoskeletal impairment.

---

[3]     Listing 1.00B contains general language suggesting that *all* of the musculoskeletal system impairment listings require a showing of inability to ambulate effectively or perform fine and gross movements effectively.  Despite that general language in 1.00B, many of the individual musculoskeletal system impairment listings include a requirement within the listing that the claimant be unable to ambulate or perform fine and gross movements effectively.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.02A, 1.02B, 1.03, 1.04C, 1.05B, 1.05C, 1.06B.  Listing 1.04A does not contain those requirements. "When an agency includes a requirement in only one section of a regulation, we presume the exclusion from the remainder of the regulation to be intentional." *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007)  citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct 296 (1983).  Indeed, Defendant does not assert that Plaintiff must show that he is unable to ambulate or perform fine and gross movements effectively in order to meet the requirements of Listing 1.04A.  (Dkt. No. 14 at 11-12.)

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00Q  (2007).

Under the formula set out in Social Security Ruling 02-01p, Plaintiff is obese.  (T. at 68, 286.)  The ALJ's decision does not mention Plaintiff's obesity.  It is thus not possible for this Court to determine whether the ALJ considered any additional and cumulative effects of obesity when assessing whether Plaintiff has a listing-level musculoskeletal impairment.  Accordingly, remand is appropriate.

**B.      The ALJ Erred By Rejecting the Opinions of Treating Physician DiBona But Properly Rejected the Opinions of Treating Physician Grossinger.**

Plaintiff argues that the ALJ erred by rejecting the opinions of his treating physicians. (Dkt. No. 10 at 5-15.)

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. § 404.1527(d)(2) (2007).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2) (2007).

11

**1.**      **The ALJ Erred By Rejecting the Opinion of Treating Physician Anthony D. DiBona, D.O.**

Anthony D. DiBona, Jr., D.O., treated Plaintiff regularly until  May 2003[4].  (T. at 188-190, 241-260, 261.)  On June 6, 2003, Dr. DiBona wrote to Plaintiff's union.  He stated that it was his "medical opinion that (Plaintiff) is totally and permanently disabled from doing ironwork at this time.  It is also very unlikely that his situation will improve to the point that he would be able to return to his usual occupation."  (T. at 189.)

On June 23, 2003, Dr. DiBona wrote to the New Jersey Division of Disability Determination Services.  (T. at 188, 190.) He stated: "It is ... my impression that (Plaintiff) is significantly disabled from working as an ironworker because of his residual upper extremity radiculopathy symptoms."  (T. at 190.)

On January 3, 2005, Dr. DiBona completed an RFC assessment form.  (T. at 261-266.) Because the form required only that Dr. DiBona check the appropriate boxes, very little of the form is in Dr. DiBona's own words.   In his own words, Dr. DiBona stated that Plaintiff "has numbness, tingling, weakness and pain in his upper and lower extremities."  (T. at 261.)  In response to the form's questions, Dr. DiBona opined that Plaintiff's impairments had lasted or were expected to last at least twelve months, that Plaintiff is not a malingerer, that Plaintiff's experience of pain or other symptoms was frequently severe enough to interfere with attention and concentration and that Plaintiff had marked limitation in his ability to deal with work stress.

---

[4]      Some of Dr. DiBona's records show that he treated Plaintiff as early as October 2, 2000.  (T. at 248.)  In his RFC assessment, Dr. DiBona stated that he initially saw Plaintiff on January 15, 2002. (T. at 266.)  In a June 2003 letter to the New Jersey Division of Disability Determination Services, Dr. DiBona said he initially evaluated Plaintiff on October 24, 2002.  (T. at 188.)

(T. at 262-263.)  In Dr. DiBona's opinion, Plaintiff could walk one city block without rest, sit for

20 minutes at one time, stand for five minutes at one time, stand/walk for less than two hours in

an eight-hour workday, sit at least six hours in an eight-hour workday, and required periods of

walking around every ten minutes during an eight-hour workday.  (T. at 263.)  The periods of

walking around should be two minutes long.  (T. at 264.)  He opined that Plaintiff would need a

job that permitted shifting positions at will from sitting, standing or walking and that Plaintiff

would need to take a five minute unscheduled break every hour.  (T. at 264.)   He opined that

Plaintiff could lift ten pounds occasionally and could spend 10% of an eight-hour workday

grasping, turning or twisting objects, 10% doing fine manipulations, and 5% reaching.  (T. at

264- 265.)  He opined that Plaintiff could bend at the waist 5% of the day and twist 5% of the

day.  (T. at 265.)  He opined that Plaintiff's impairments would cause him to be absent from

work more than three times a month.  (T. at 265.)

     The ALJ explicitly afforded "no significant weight" to Dr. DiBona's opinions:

> Dr. DiBona's residual functional capacities evaluation is somewhat
> internally inconsistent given his prior opinions ... that claimant was
> totally disabled from his past relevant work only.  Moreover, Dr.
> DiBona's ... report indicated claimant's last examination as May 30,
> 2003, just prior to his otherwise well supported opinions that only
> preclude a return to his past relevant ironworks job.  Additionally, the
> limitations noted by Dr. DiBona are generally inconsistent with the
> objective medical evidence of record including Dr. Horn's clinical
> findings.  Specifically, Dr. Horn's report, consistent with claimant's
> testimony, shows that since surgery claimant no longer has significant
> pain, a symptom which Dr. DiBona indicated as present.  For these
> reasons, Dr. DiBona's residual functional capacity evaluation of the
> claimant is not regarded as credible and is, therefore, afforded no
> significant weight .

(T. at 29.)  Thus, the ALJ rejected Dr. DiBona's RFC assessment because (1) it contradicted his

earlier letters to the union and the New Jersey Department of Disability; and (2) it was inconsistent with the record because it relied on the fact that Plaintiff was in pain.

Dr. DiBona's RFC assessment does not contradict his prior opinions.  Dr. DiBona did not indicate either in his letter to the union or in his letter to the New Jersey Division of Disability Determination Services that Plaintiff was totally disabled from his past relevant work "only". Rather, he offered his opinion that Plaintiff could not work as an iron worker.  He did not offer any opinion about whether or not Plaintiff could perform other work.   To the extent that Dr. DiBona's opinions could be construed as contradictory, the ALJ had an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel.  This requirement is particularly important when the record contains conflicting reports or opinions from a treating physician.  In such situations, the ALJ cannot pick and choose from the opinions of the treating physician in order to justify denying disability."  *Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490-491 (W.D.N.Y. 2004)(citations omitted).

The ALJ's rejection of Dr. DiBona's assessment because it relied on the fact that Plaintiff was in pain is not supported by substantial evidence for two reasons.  First, it is not clear whether the assessment, in fact, relies on Plaintiff's pain.  Regarding pain, Dr. DiBona reported in his own words that Plaintiff "has numbness, tingling, weakness and pain in his upper and lower extremities"  (T. at 261)   and circled the word "frequently" in response to the question "how often is your patient's experience of pain or other symptoms severe enough to interfere with attention and concentration?"  (T. at 263.)  It is not clear whether Dr. DiBona's RFC assessment relied on "pain".  It is just as likely that Dr. DiBona  relied on Plaintiff's "numbness,

tingling, weakness" and "other symptoms".  To the extent that Dr. DiBona's assessment was ambiguous, the ALJ was under a duty to develop the record by recontacting Dr. DiBona to clarify the ambiguity.  20 C.F.R. § 404.1512(e).

Second, while Plaintiff told both Dr. Horn (T. at 276-277) and the ALJ (T. at 290-291) that the pain in his hands and legs had diminished since his surgery, he also reported continued headaches and neck pain. (T. at 290, 299-300.)  In addition, on examination, Dr. Horn found that Plaintiff complained of "pain posterially (sic) over the neck radiating across the shoulders at the extreme range of motion".  (T. at 278.)   Thus, the ALJ's assertion that "since surgery claimant no longer has significant pain" is not supported by substantial evidence.

Accordingly, remand is appropriate.

### 2.     The ALJ's Rejection of the Opinion of Treating Physician Bruce Grossinger, D.O. Is Supported By Substantial Evidence.

Bruce Grossinger, D.O., treated Plaintiff three times.  (T. at 207-212, 232-240, 274.) Each time, he noted that Plaintiff has an 'ongoing disability.'  (T. at 207, 240, 274.)

The ALJ explicitly afforded "no significant weight" to Dr. Grossinger's conclusion that Plaintiff was disabled:

> Dr. Grossinger's opinions are conclusory and otherwise not supported by the totality of the record evidence, they are accorded no significant weight.  I note that an EMG of claimant's lower extremity by Dr. Grossinger on January 29 (sic), 2004 showed totally normal findings.  EMG of claimant's upper extremities on February 2, 2004 showed a right C6 and C7 radiculopathy but all other muscles were normal.  Although an August 11, 2004 evaluation showed weakness of the shoulder girdles and forearms with spasm in the cervical and lumbar regions, these findings were considered by me as restricting claimant from medium and heavy exertion work, work requiring fine motor

15

activity with his hands, and work involving frequent twisting of claimant's neck.

(T. at 29-30.)

The ALJ correctly noted that Dr. Grossinger's opinions were conclusory and contradicted his own clinical findings.  The ALJ's rejection of Dr. Grossinger's opinions is thus  supported by substantial evidence.

### C.     The ALJ's Determination Regarding Plaintiff's Credibility Is Not Supported By Substantial Evidence.

Plaintiff argues that the ALJ erred by finding that Plaintiff's testimony regarding his ability to work and the severity of his symptoms was not credible.  (Dkt. No. 10 at 22-25.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2007); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and SSR 96-7p.  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the

claimant's pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone.  *Id.*  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2007).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140,

147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at

*19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's

credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to

observe the claimant's testimony and demeanor at the hearing.")).

     Plaintiff testified that he could not work due to numbness in both hands, particularly his

right hand, and in his legs. (T. at 289-290.)  He testified that before his surgery he had pain and

numbness in his legs, and after his surgery there was only numbness.  (T. at 291.)  Plaintiff

testified that he experiences numbness in his arms and hands "all the time."  (T. at 297.)  When

he uses his arms and hands they "will get stiffer and stiffer."  (T. at 297.)  Once or twice a day

when he is holding something with his right hand he drops it.  (T. at 297-298.)  He can write his

name two or three times and "that is about it."  (T. at 298.)  He cannot write with his left hand.

(T. at 299.)  He can use the left hand a little longer than the right one, approximately ten minutes,

but he cannot do much with his left hand other than holding a bottle or a glass.  (T. at 299.)

     Plaintiff testified  that he suffers  pain in his neck when he looks up or moves it a lot  (T.

at 290) and that he gets headaches "once a week or so."  (T. at 299.)  On a scale from one to ten,

the headaches are about an eight.  (T. at 299-300.)  He takes Vicodin for his headaches "when

that gets bad for my neck area."  (T. at 300.)  Plaintiff has ringing in his ears all the time.  (T. at

301.)

     Plaintiff testified that he tosses and turns a lot in his sleep trying to find a comfortable

position.  (T. at 302.)  Upon rising  on a typical day, he "just get(s) up and (has his) coffee, and

not too much to do.  I sit around watching TV and watch the birds, I guess."  (T. at 296.) Plaintiff

spends three quarters of the day in his recliner.  (T. at 301.)  On days when he has a headache, he

takes the Vicodin at noon and naps for 20-30 minutes.  (T. at 300.)  On his disability application,

Plaintiff reported that he shops with his wife once a week (T. at 87) but does not do any other

household chores.  (T. at 88.)  He reported that although he is able to drive, he chooses not to.

(T. at 88.)  He has not taken any trips or vacations since he stopped working.  (T. at 296-297.)

Plaintiff testified that he can walk 100-200 feet, or one city block,  before getting too

sore.  (T. at 298-299.)  Plaintiff testified that he can stand for about five minutes at a time.  (T. at

301.)

Regarding Plaintiff's credibility, the ALJ stated:

> The claimant testified that he is right handed and is able to drive for
> short distances.  He also testified that while he does not have any
> pain, he has numbness in his legs.  Claimant admitted that since his
> February 2003 surgery, he no longer has the shooting pain down his
> legs.  He also reported no longer having any pain in his neck or in any
> other part of his body.  Approximately once a week, claimant has a
> headache.  He reported that he spends his time watching television.
>
> While claimant is determined to have some limitations as a result of
> his impairments, I find that claimant's statements about his ability to
> work and the severity of his limitations are not credible to the extent
> those statements allege a level of disabling symptoms which exceed
> what the objective evidence and clinical findings could reasonably be
> expected to have produced, and which asserted limitations are
> inconsistent with claimant's reasonably broad activities of daily
> living.

(T. at 30.)

The ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence.

Contrary to the ALJ's assertion that Plaintiff "reported no longer having any pain in his neck",

Plaintiff testified that he suffers neck pain when he moves his neck too much (T. at 290).  The

19

daily activities about which he testified - drinking coffee, watching television, and watching birds - cannot reasonably be construed as "broad".  Accordingly, remand is appropriate.

  **D.**  **The ALJ's Determination That Plaintiff Has the RFC to Perform Light Work Is Not Supported By Substantial Evidence.**

   Plaintiff argues that the ALJ erred by finding that he could perform light work.  (Dkt. No. 10 at 16-20.)

   A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments.  20 C.F.R. § 404.1545(a) (2007).  An  RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)(Hurd, D.J.).

   To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a (2007).  Non-exertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150.  Further, "(t)he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  S.S.R. 96-8p, 1996 WL 374184, at *7

(S.S.A.).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150.

Here, the ALJ found that Plaintiff is capable of performing sedentary and light work involving lifting 20 pounds, standing/walking up to six hours in an eight-hour workday, sitting intermittently for the remaining two hours with no fine motor work, no significant climbing, balancing, crouching, and crawling, only occasional stooping and kneeling, and no jobs requiring frequent twisting of the neck.  (T. at 30.)

When determining Plaintiff's RFC, the ALJ "accorded significant weight" to the opinions of a non-examining agency consultant (T. at 28) and Dr. Horn.  (T. at 30.)  The ALJ appears to have assumed that Dr. Horn found that Plaintiff could perform light work.  However, Dr. Horn's assessment is somewhat ambiguous.  Based on his examination, Dr. Horn opined that Plaintiff "has shown very encouraging recovery and should be *further encouraged to rehabilitate himself* to at least some activity *probably* at the level of light work; sedentary with opportunities for change of posture as needed; *lifting and carrying five to ten pounds* and movement of the arms not above shoulder level; squatting in the approved manner; operation of non-repetitive machinery with regard to posture and limited time constraints in one position."  (T. at 281)(emphasis added).  It is not clear whether Dr. Horn believed that Plaintiff could immediately perform work at the level indicated or whether he believed that Plaintiff needed rehabilitation first.  Further, his opinion is internally inconsistent because light work requires lifting up to 20 pounds at a time (20 C.F.R. § 404.1567 (2007)) but Dr. Horn stated that Plaintiff could lift only five to ten pounds.  (T. at 281.)

21

Due to the ambiguity of Dr. Horn's recommendation and the ALJ's improper rejection of Dr. DiBona's opinion and Plaintiff's testimony, the ALJ's RFC assessment is not based on substantial evidence.  Accordingly,  remand is appropriate.

**E.      The Court Recommends, But Does Not Order, That the Commissioner Assign This Case to a Different ALJ Upon Remand.**

In his decision, the ALJ stated:

> Of note, claimant testified having moved to New York State and made the decision to live on an Indian Reservation where he receives free medical care.  Claimant testified that his income includes a disability pension of $1,175 per month.  There is no evidence that claimant has sought any work since his alleged onset date of December 7, 2002.  Indeed, claimant's sizeable pension may well have decreased his incentive to look for a lower paying job at the light and/or sedentary exertion level.

(T. at 30.)

Plaintiff argues that this comment shows that the ALJ was biased against him and that the Court should accordingly remand for the calculation of benefits.   (Dkt. No. 10 at 26-27.) Defendant's brief does not address this issue.

"(L)itigants seeking Social Security benefits are entitled to have a fair and impartial decision-maker.  Indeed, a basic element of due process is the right to an impartial and unbiased adjudication of a claim ... This aspect of due process applies equally in an administrative setting as it does in a judicial forum.  Indeed, the absence in the administrative process of procedural safeguards normally available in judicial proceedings has been recognized as a reason for even stricter application of the requirement that administrative adjudicators be impartial."  *Pronti v. Barnhart*, 339 F. Supp. 2d 480, 491-492 (W.D.N.Y. 2004)(citations omitted).

The remedy when an ALJ is biased is not remand for the immediate award of benefits. Rather, the remedy is either (1) a remand under sentence six of 42 U.S.C. § 405(g), if the plaintiff has introduced new evidence of the ALJ's bias at the district court level, such as affidavits and statistical information, that the Commissioner has not had an opportunity to consider; or (2) a remand under sentence four of 42 U.S.C. § 405(g).  *Pronti*, 339 F. Supp. 2d 480.  Here, a remand under sentence four is appropriate because Plaintiff has not presented any new evidence.

As a general rule, the selection of a new ALJ on remand is within the discretion of the Commissioner.  *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004).  However, "when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate. Factors for consideration in this determination include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party." *Id.*

Even when it appears that remand to a new ALJ may be appropriate, courts are reticent about ordering the Commissioner to assign a different ALJ when the plaintiff has not requested such relief ( *See e.g. Dioguardi v. Commissioner of Social Security*, 445 F. Supp. 2d 288, 300 (W.D.N.Y. 2006)) or where the record does not "clearly" demonstrate that the ALJ is biased.  *See e.g. Joe v. Apfel,* No. 97-CV-772S(H), 1998 WL 683771,  at *5-6 (W.D.N.Y. 1998).   In such situations, the reviewing court should recommend, but not order, that the Commissioner assign a new ALJ to the case on remand.

Here, Plaintiff did not request that this Court direct the assignment of a new ALJ on remand.  Moreover, the record does not "clearly" demonstrate that the ALJ was biased.  The ALJ's reference to Plaintiff's residence was certainly inappropriate.  The fact that Plaintiff lives on an Indian reservation is completely irrelevant to the resolution of his Social Security disability claim.  The ALJ's comments about Plaintiff's 'decreased incentive to look for work' and Plaintiff's pension could reflect a commonly-held derogatory stereotype that Native Americans are lazy and inclined to exploit government benefits.  *See, e.g., Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 41 F.3d 1190, 1192-1193 (7th Cir. 1994)(describing prejudices held by one particular anti-Native American group).  However, the ALJ's comment does not appear to rise to the level of a "clearly manifested bias or inappropriate hostility" that would require this Court to order remand to a different ALJ.   Other than the quoted paragraph and one question during the hearing about Plaintiff's "cultural heritage" (T. at 295), the ALJ did not focus on Plaintiff's ethnicity.   *Compare Pastrana v. Chater*, 917 F. Supp. 103 (D. P.R. 1996)(court ordered assignment of different ALJ on remand where original ALJ spent ten minutes of one-hour hearing engaging in bizarre anti-Puerto Rican rants).  Accordingly, this Court recommends, but does not order, that the Commissioner assign a new ALJ to the case upon remand.

**WHEREFORE,** it is hereby

**ORDERED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[5] for further proceedings consistent with the above.  This Court

---

[5]    Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

recommends that the Commissioner assign the case to a different ALJ on remand.

Dated: September 17, 2007
        Syracuse, New York

George H. Lowe
United States Magistrate Judge

_____

cause for a rehearing."  42 U.S.C. § 405(g).